And the last case for argument this morning is United States v. Eberts. Mr. Spivak. The court please. Good morning, your honors, counsel. Barry Spivak, your honor, on behalf of the defendant. Christopher Eberts obtained money from the victim in this case with the intent that he was going to make a movie out of the book that the victim wrote, a book that chronicled his son's successful fight to overcome a brain tumor. Instead, Eberts wasted most of the money on his personal lifestyle. I can't defend that. I wouldn't even try. The principal focus of our appeal is how the district court handled the fact that Eberts did pay $400,000, approximately about two-thirds of the amount of restitution prior to being sentenced. And we think that the district judge erred in that he seemed to take the position that Mr. Eberts did not deserve any sentencing credit for the fact that he made this substantial amount of restitution. He owed over $500,000. Prior to the adjudication of guilt, he paid $400,000. So why didn't the judge give Mr. Eberts any credit for the restitution payment? Wasn't that just a settlement? It was a settlement of the civil case. Yes, Your Honor, it was. But he was still under indictment, and he was going to have to pay full restitution. So either way, he was going to have to pay the restitution. The judge's reasoning, and that was one of the reasons, as you point out, the judge said it was because Eberts didn't pay it back. His family or his mother paid it back. He said it wasn't voluntary because it was part of a civil judgment, a civil judgment, by the way, that he did not defend. So it was a default judgment. And he said it wasn't the entire amount of the judgment because the judgment was for $1 million. And the reason the judgment was $1 million is part of the default judgment was a punitive aspect to the judgment. And in the judge's eyes, this was really, he paid it, it was just a big win for him and a good business deal. We submit that was not an appropriate basis for the court to deny Eberts any credit for the payment of restitution. We think one of the goals of the guidelines or sentencing is to encourage restitution. Denying him credit because the money came from the family is not going to influence others to pay restitution. To say it's not voluntary is nothing more than to say that, well, he committed a crime, he owed restitution. In every case, it's not voluntary. The defendant owes it and should pay it. And in many cases, he doesn't. That was why he was there, because he owed this money. With respect to whether it was a big win or a good business deal, I think the judge was focusing on the fact that he paid $400,000 and, in fact, it didn't cover the entire amount that he owed. It didn't compromise what he was going to have to pay in restitution in the criminal case because under the Mandatory Victim Restitution Act, he was going to have to pay the whole amount regardless of what he settled the civil judgment for. So it didn't make any difference. It wasn't going to compromise what he was going to owe in the criminal case. Ebert's lawyer said at the hearing below that, in his experience, he found a $400,000 restitution payment to be extraordinary, and we agree with that assessment. It's not hard to find criminal defendants taking every step possible to avoid making any kind of payment to hiding their assets. Ebert's didn't do that. With his family's help, he paid. Now, the fact is, one might say he was fortunate enough to have family that could come up with money to help him pay the restitution. Does that mean that rich people get lesser sentences or entitled to lesser sentences than people that are less fortunate? There's all sorts of ways for people to show their acceptance. This is just one of them. One of the cases we may look at, and I'm almost hesitant to raise it, Judge Caney, because it was the Warner case, and I know you were the author of that opinion. He received some benefit because he was able to make extraordinary charitable contributions that he received credit for. The court didn't say, as it might have, that it was unfair to credit Warner for being able to make contributions when another defendant wouldn't have the amount of assets he had and therefore be able to take advantage of that. Ebert's might have made a bunch of great many charitable contributions if he had that kind of money. In other words, every avenue of acceptance of responsibility is not open to every person. We borrow a quote from Judge Celebrez that to suggest when a defendant is affluent, his attempts at restitution can never qualify as an exceptional circumstance is a repugnant equal protection ideology as a whole lack of ability to make restitution against an indigent defendant. As I said before, we think paying restitution should be encouraged. Not giving credit for such a substantial payment is counterproductive. There was a case this court decided not long ago, Castaldi. Castaldi ran a Ponzi scheme for 30 years. He didn't start out with that intent. He inherited the scheme when he took over his father's business and he didn't know how to extricate himself. He eventually turned himself into the government, gave extensive cooperation, provided the government with evidence 15, 20, and 30 years old that the government probably would never have been able to prove had Castaldi not talked candidly. He still was going to receive a stiff sentence. The government, I think, agreed to something in the neighborhood of 16 years. The judge gave him 30. Castaldi deserved a stiff sentence, but – and the sentence was affirmed – but what that teaches people in the trenches, the defendants and their lawyers, is that this sort of open cooperation and providing candid information about yourself may not be such a good idea. It may not be such a great benefit. Not giving cooperation, not getting consideration of that, discourages cooperation. In this case, I'm a financial victim. I want my money back. I may want to see the defendant in jail, but I also want my money back. Sometimes people turn themselves in when they see the inevitable coming about this far away. Absolutely. They turn themselves in when they see that coming, but they also very often still try to avoid – Which was the case of Castaldi or whatever it was. Pardon me? That was the case of that – Oh, yes. Yes, that was the case of Castaldi. But the government didn't know the extent of Castaldi's crimes because it went back 30 years. In this case, future defendants viewing this case, if the defendant is not given some credit for his restitution, it's a warning to other defense lawyers and criminal defendants that making a substantial payment of restitution is not worth making because it may not positively impact their sentences. I see my light is on. I'll reserve the remainder for rebuttal. Thank you, Your Honors. Good morning. Jason Baum on behalf of the United States Council. District courts are required to address mitigation arguments. They're not required to accept mitigation arguments. Here, the district court addressed and rejected the mitigation argument regarding the restitution payment. The district court did credit restitution. It reduced the amount of restitution owed by that payment. It just didn't find that it mitigated Mr. Ebert's conduct or that it required a reduced sentence. And if this court were to require such a thing, the lesson that would teach wealthy defendants is if you make the payment, you will get a No going in. Dangerous question isn't going to be said either way, as near as I can tell. And unless there are any other questions from the court, we will rely on our brief. Nothing from me. There's very little for you to rebut, but give it your best shot. You said it's a matter of discretion with the court. We shouldn't interfere with it. I think, yes, if the court gives a logical and valid reason as to why the court wasn't giving credit for restitution in that case. He has to say that? I think when the defendant makes a credible argument as to why there should be some consideration given for restitution, the court should address why the court is not giving credit for restitution. And the court did give the reasons in this particular case, and I just think that the reasons were not valid reasons. The fact that it was involuntary, that sort of the court must give credit for restitution. It's going to depend on the particular case. In this case, the court gave no reason as to why he was not giving. The reasons he gave were not valid reasons, and he should have given some credit for that restitution in this case. In this case, as in many of these, defense counsel consistently push for the court of appeals to be the sentencing court, not the district court. You know, Judge, but unfortunately, I think it has to go back to the district court for him to consider the fact that there was restitution and consider how that would apply to his sentence. The defendant didn't ask for anything great. He said whatever points you could give the defendant based on the fact that he made the restitution, whether he gave him credit for two points or three points or four points, whatever it is, it was going to have a significant impact on his sentence. Thank you, Your Honors. The case will be taken under advising. Thanks to both counsel for splendid arguments and good briefs.